IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT C. LONG, <br><br> Plaintiff, <br><br> v. <br><br> ELIZABETH BOUCHER and NORTH SALT LAKE CITY, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> Case No. 1:19-cv-56 <br><br> Howard C. Nielson, Jr. <br> United States District Judge <br><br> FOR PUBLICATION |

Plaintiff Scott Long sued Defendants Elizabeth Boucher and North Salt Lake City under 42 U.S.C. § 1983, alleging that Defendants violated his Fourth Amendment rights by compelling him to provide a DNA sample as part of a criminal investigation. Although that sample was collected pursuant to a warrant, Mr. Long alleges that Detective Boucher knowingly or recklessly omitted material facts from the affidavit she submitted to obtain that warrant. Defendants have moved to dismiss, arguing that Detective Boucher is entitled to qualified immunity and that Mr. Long has failed to allege a factual basis for holding North Salt Lake City liable. Defendants' motion is granted in part and denied in part.

## I.

Michael Moore, who is not a party to this case, was assaulted early in the morning of May 12, 2017, while on his way to work. *See* Dkt. No. 2 ¶ 12 ("Complaint").[1] The North Salt Lake Police Department was able to collect the assailant's DNA from under Mr. Moore's fingernails. *See id.* ¶ 13. Detective Boucher was assigned to investigate the assault. *See id.* ¶ 20. "Approximately 10 months after the assault, Moore provided Boucher the name of Plaintiff Scott Long as a suspect." *Id.* ¶ 23. Mr. Moore provided this information after a conversation with his wife, in which she had mentioned Mr. Long in an unrelated context. *See id.* ¶ 24. After thinking of Mr. Long, Mr. Moore suspected that he could have been the attacker. *See id.* Years earlier, Mr. Moore and others had reported allegations of misconduct by Mr. Long to Mr. Long's military superiors, and Mr. Moore subsequently observed Mr. Long staring at him during meetings. *See* Dkt. No. 2-5 at 6–7. Mr. Long was passed over for a promotion shortly before he retired from the military, and Mr. Moore believed that Mr. Long may have blamed those who reported his alleged misconduct for his failure to get the promotion. *See id.*

Detective Boucher determined that a photograph of Mr. Long resembled a composite sketch that the FBI had created based on a description of the attacker provided by Mr. Moore before he identified Mr. Long as a suspect. *See id.* at 6. Mr. Long, who resides in Texas, was then interviewed by law enforcement there. *See id.* at 7–8. Mr. Long initially consented to provide a sample for a DNA test but later changed his mind, claiming that he suspected someone might have planted his DNA to frame him. *See id.* at 8.

---

[1] Because this is a motion to dismiss, the facts recited here are drawn from the complaint and accompanying affidavits.

Mr. Long also insisted that he was traveling in Ohio and Georgia at the time of the attack. *See* Dkt. No. 2 ¶ 29. To substantiate this alibi, Mr. Long gave Detective Boucher several receipts. These included a receipt from Delta Air Lines showing that Mr. Long had booked flights from Texas to Ohio, with a connection in Georgia, for May 10. *See* Dkt. No. 2-1 at 2. The receipt described the status of these flights as "FLWN." *Id.* The receipt also showed that Mr. Long had booked flights for May 12—the day of the attack on Mr. Moore—from Ohio to Texas, again with a connection in Georgia. *See id.* The status of these flights was listed as "EXCH." *Id.* Mr. Long also provided a receipt from a Hilton Garden Inn in Ohio. *See* Dkt. No. 2-3 at 2. This receipt showed that Mr. Long checked in, purchased internet access, and ate at the hotel's restaurant on May 10, but does not list any activity on May 11 or May 12 other than standard room charges and taxes. *See id.* Finally, Mr. Long produced credit card receipts showing various purchases with transaction dates between May 10 and May 12. These included a payment to the Hilton Garden Inn with a transaction date of May 10 that was posted on May 15, a payment for a car rental in Ohio with a transaction date of May 10 that was posted on May 13, a purchase at what appears to be a restaurant in Ohio and three payments to Delta on May 11, and a purchase at what appears to be a restaurant in Ohio as well as a small purchase at what appears to be a gas station or convenience store in Ohio on May 12. *See* Dkt. No. 2-2 at 2.[2]

Detective Boucher attempted to verify the alibi. She contacted Mr. Long's superior at work, who confirmed that Mr. Long had taken a business trip to Ohio in May 2017 but could not remember the precise dates. *See* Dkt. No. 2-5 at 9. She also served subpoenas on the credit card

---

[2] These transactions are all shown on Mr. Long's MasterCard statement. Mr. Long also provided an American Express statement showing a purchase at a sporting goods store in Texas that posted on May 12. *See* Dkt. No. 2-4 at 9. Unlike the MasterCard statement, the American Express statement does not provide transaction dates.

companies, Delta Air Lines, and AT&T, obtained a warrant for Mr. Long's DNA, and, after AT&T refused to provide GPS data without a warrant, obtained a warrant for that data. *See id.* at 9–11.

Detective Boucher's application for the DNA warrant relied on (1) Mr. Long's resemblance to the FBI composite sketch, (2) Mr. Moore's explanation of Mr. Long's possible motive, and (3) a description of Mr. Long's behavior when interviewed about the assault by police in Texas, including his initial agreement and subsequent refusal to voluntarily provide a DNA sample, as well as the reason he offered for that about-face. *See* Dkt. No. 2-6. Detective Boucher omitted at least some of the circumstances surrounding Mr. Moore's identification of Mr. Long, however, and she omitted any mention of Mr. Long's asserted alibi, the evidence he had offered in support of it, or the fact that she had submitted subpoenas to the credit card companies, AT&T, and Delta Air Lines but had not yet received information that might corroborate or disprove the alibi. *See* Dkt. No. 2 ¶ 56.

Detective Boucher did not wait for the information she had sought from the credit companies, Delta Air Lines, and AT&T before executing the DNA warrant. A test of Mr. Long's DNA established that it did not match that of Mr. Moore's attacker. *See id.* at 11. Detective Long later received additional information that further corroborated Mr. Long's alibi, including GPS data from AT&T showing that Mr. Long's cell phone was in Ohio and Georgia on May 11 and May 12, as well as confirmation that Mr. Long's credit card had been used in several transactions in Ohio during the relevant period. *See id.* It appears that no one now suspects that Mr. Long was Mr. Moore's assailant.

Mr. Long then brought this suit. *See* Dkt. No. 2. Soon afterward, Defendants moved to dismiss. *See* Dkt. No. 13.

## II.

Defendants contend that Detective Boucher is entitled to qualified immunity. To overcome this defense, a plaintiff must establish that the officer asserting qualified immunity "violated a federal statutory or constitutional right" and that "the unlawfulness of [her] conduct was clearly established at the time." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). Whether an official who raises this defense "may be held personally liable for an allegedly unlawful official action" thus "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citation omitted). To determine whether an officer is entitled to qualified immunity the court must ask whether an officer has "acted in an objectively reasonable manner or, as [the Court has] sometimes put it, in 'objective good faith'." *Id.* (citation omitted). When, as here, qualified immunity is raised in a motion to dismiss, the court accepts the well-pleaded facts contained in the complaint as true and construes them in the light most favorable to the plaintiff. *See Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

Mr. Long alleges that Detective Boucher violated the Fourth Amendment's prohibition of "unreasonable searches and seizures" by compelling him to provide a DNA sample pursuant to a warrant that she obtained by submitting an affidavit that omitted material information— including, most notably, any mention of Mr. Long's alibi or the evidence offered in support of it. The court denies Defendants' motion to dismiss Mr. Long's claim against Detective Boucher. Construing the well-pleaded facts in the manner most favorable to the Plaintiff, the court cannot say as a matter of law that compelling Mr. Long to provide a DNA sample did not violate his Fourth Amendment rights. Nor can the court say, as a matter of law and at this early stage of the

proceedings, that Detective Boucher's challenged actions were objectively reasonable in light of the legal rules that were clearly established at the time they were taken.

### A.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const. amd. IV. "[S]ubject only to a few specifically established and well-delineated exceptions," the Supreme Court has held that searches conducted without a warrant "are per se unreasonable under the Fourth Amendment." *Katz v. U.S.*, 389 U.S. 347, 357 (1967); *accord Arizona v. Gant*, 556 U.S. 332, 338 (2009). And as the plain language of the Fourth Amendment makes clear, to obtain a warrant, a law enforcement officer must submit an affidavit demonstrating probable cause. *Whiteley v. Warden*, 401 U.S. 560, 564 (1971).

"The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only 'probable cause . . . to believe the evidence sought *will aid* in a particular apprehension or conviction.'" *Messerchmidt*, 565 U.S. at 552 n. 7 (citation omitted). Probable cause "is not a precise quantum of evidence—it does not, for example, require the suspect's guilt to be more likely true than false. Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotation marks omitted); *see also Puller v. Baca*, 781 F.3d 1190, 1200 (10th Cir. 2015) ("To establish probable cause . . . the affidavit need only to establish something 'more than a bare suspicion'" that the suspect committed a crime.). When information has been

omitted from an affidavit, "the existence of probable cause is determined by examining the affidavit . . . as if the omitted information had been included and inquiring if the affidavit . . . would still have given rise to probable cause." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (internal quotation marks omitted); *see also Puller*, 781 F.3d at 1197.

Compelling Mr. Long to provide a DNA sample clearly constituted a search. *See Maryland v. King*, 569 U.S. 435, 446 (2013) (citing *Schmerber v. California*, 384 U.S. 757, 770 (1966)). That search was conducted pursuant to a warrant, and Defendants have offered no reason to think a warrant was not required—they have not, for example, argued that any exception to the warrant requirement applies here.

Detective Boucher submitted an affidavit in support of her successful application for the warrant to obtain Mr. Long's DNA. As explained, the affidavit relied on Mr. Long's resemblance to the FBI composite sketch, his possible motive for the attack, and his at least arguably suspicious about-face regarding his willingness to voluntarily provide a DNA sample. It is evident that in issuing the warrant for a DNA test, the magistrate determined that these facts were sufficient to establish probable cause.

Detective Boucher omitted at least some of the circumstances surrounding Mr. Moore's identification of Mr. Long, however, as well as any of the facts relating to Mr. Long's alibi or Detective Boucher's attempts to obtain information that would corroborate or disprove it. Mr. Long contends that when these facts are added to Detective Boucher's affidavit, they negate probable cause.

The court concludes that whether an affidavit that included the omitted facts would establish probable cause is a close enough question that it cannot be resolved as a matter of law

at this stage of the proceedings.[3] The court does not question the magistrate's judgment that the facts contained in the actual affidavit, at least considered in isolation, were sufficient to establish probable cause. And while the omitted facts might have negated probable cause, it is not obvious that they would have done so.

First, Detective Boucher omitted information regarding how Mr. Moore initially identified Mr. Long. Although her affidavit indicated that the identification came ten months after the attack, she did not mention that Mr. Moore's wife first raised Mr. Long's name—albeit in an unrelated context—prompting Mr. Moore to reflect on Mr. Long as a potential suspect. *See* Dkt. No. 2 ¶¶ 23–24. The court views this omission as insignificant in the context of the other information provided, however.

Next, although Mr. Long describes his alibi as "ironclad," the court rejects that characterization. To be sure, Mr. Long's supervisor indicated that Mr. Long had traveled on business in May, but he was unable to recall the precise dates. The supervisor's statement thus did not conclusively establish that Mr. Long was not in Utah on the date of the attack. And even accepting the documents proffered in support of the alibi as authentic—and it is not clear that Detective Boucher was required to do so absent further inquiry—they do not demonstrate an ironclad alibi.

Mr. Long places great weight on the airline ticket receipts, and he is correct that photo identification is generally required to board a plane. It follows that the designation "FLWN" on the receipt strongly suggests that Mr. Long did fly from Texas to Ohio on May 10, 2017. The

---

[3] Tenth Circuit precedent makes clear that the issue of probable cause turns at least in part on factual questions and thus should be decided by a jury in a Section 1983 suit, at least if there are genuine disputes of material fact. *See DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990).

designation "EXCH," however, indicates that Mr. Long did not use, but instead exchanged, his tickets for the May 12, 2017, flights from Ohio to Texas. The airline tickets thus do not establish that Mr. Long was not in Utah on May 12, 2017, which was the date of the attack. Indeed, the only thing the tickets appear to show for certain is that Mr. Long was not on the flights from Ohio to Texas on the date of the attack.

So too the hotel receipt: because photo ID is generally required to check into a hotel, the receipt does suggest that Mr. Long was in Ohio when he checked into his room and ate dinner on May 10. But the room charges for the subsequent days likely would have accrued regardless of whether he remained in Ohio. And photo ID is generally not required to check out of a hotel. For these reasons, the hotel receipt does not necessarily establish that Mr. Long was in Ohio on the date of the attack.

The same is true of the car rental in Ohio: photo ID is generally required to pick up a rental car, though not to return one. Mr. Long's credit card statement suggests a two-day rental starting on May 10. This appears to indicate that he probably was in Ohio on May 10, but he would not necessarily have had to be there on May 12 when the car was presumably returned— someone could have done that for him. The car rental thus does not necessarily establish Mr. Long's whereabouts on the date of the attack.

With respect to the other credit card purchases, the American Express statement lists only posting dates, not transaction dates, and thus does not establish where Mr. Long was on the date of the attack. And even assuming the purchase at a Texas sporting goods store that was posted on May 12 occurred the same day, that purchase could have been made remotely. There are also two MasterCard purchases with transaction dates of May 12 that appear to have been made in Ohio at a restaurant and a gas station or convenience store. Generally, of course, such purchases would

be made in person. But photo ID is usually not required at a restaurant, gas station, or convenience store—again, someone could have used the card for Mr. Long.

Finally, it is uncontroverted that when Detective Boucher applied for the DNA warrant, she failed to mention that she had submitted subpoenas to AT&T, Delta, and the credit card companies but had not yet received the information she had sought. *See* Dkt. No. 2 ¶ 56(d). But "it is surely uncontroversial to suggest that officers can follow alternative and competing leads when both are supported by a fair probability they will yield something productive." *United States v. Harris*, 735 F.3d 1187, 1194 (10th Cir. 2013) (internal quotation marks omitted). To the extent that Plaintiff suggests that Detective Boucher was required to investigate these leads in any particular order—for example that she was required to exhaust other avenues for verifying the alibi before seeking a warrant for Mr. Long's DNA—that is incorrect. And regardless of whether information relating to Mr. Long's asserted alibi would have negated probable cause, the court does not believe omission of information regarding Detective Boucher's as yet unsuccessful attempts to corroborate or disprove that alibi adds anything of consequence to her omission of any information relating to the underlying alibi itself.

The court's discussion is not intended to suggest that including the omitted facts in the affidavit would not have negated probable cause, but only to show that it would not have necessarily or obviously done so. To the contrary, the court concludes that this is a relatively close question. Accepting Mr. Long's well-pleaded facts as true and drawing all reasonable inferences from those facts in his favor, the court cannot say as a matter of law that an affidavit that included all of the relevant facts either would or would not have established probable cause.

The court thus cannot decide whether being forced to provide a DNA sample violated Mr. Long's Fourth Amendment rights at this stage of the proceedings. It follows that Detective

Boucher is not entitled to qualified immunity as a matter of law on the ground that no constitutional violation occurred.

## B.

The court must accordingly turn to whether Detective Boucher is entitled to qualified immunity on the ground that her actions were objectively reasonable in light of the legal rules that were clearly established at the time they were taken. For the reasons that follow, the court cannot conclude as a matter of law that they were at this stage of the proceedings.

## 1.

When, as here, an officer conducts a search or makes an arrest pursuant to a warrant, the Supreme Court has specified that the test for qualified immunity mirrors the objective-good-faith inquiry set forth in *United States v. Leon*, 468 U.S. 497 (1984). As the Court explained, "[a]lthough *Leon* involved the proper application of the exclusionary rule to remedy a Fourth Amendment violation, we have held that 'the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer' who obtained or relied on an allegedly invalid warrant." *Messerschmidt*, 565 U.S. at 546 n.1 (2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 344 (1986)). Thus, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as [the Court has] sometimes put it, in 'objective good faith.'" *Id.* at 546 (quoting *Leon*, 468 U.S. at 922–23).

But "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id.* at 547. As relevant here, an officer's reliance on a warrant is not objectively reasonable if: (1) the

officer "could not have harbored an objectively reasonable belief in the existence of probable cause" or (2) "the officers were dishonest or reckless in preparing their affidavit."[4] *Leon*, 468 U.S. at 926; *see also id.* at 923; *Messerschmidt*, 565 U.S. at 547 & n.2. This test applies to "the officers who eventually execut[e] a warrant" as well as "the officers who originally obtained it or who provided information material to the probable cause determination." *Leon*, 468 U.S. at 923 n.24. And it applies to search warrants as well as arrest warrants. *See Malley*, 475 U.S. at 344 n.6.

## 2.

As explained in Part I, probable cause is a close enough question in this case that the court cannot say as a matter of law at this stage of the proceedings either that the warrant was or was not supported by probable cause. For similar reasons, the court cannot say that Detective Boucher "could not have harbored an objectively reasonable belief in the existence of probable cause." For purposes of qualified immunity, it does not matter whether this belief was ultimately mistaken. The Supreme Court has made clear that qualified immunity forecloses personal liability for an officer's objectively reasonable mistake—whether "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted); *see also Stonecipher*, 759 F.3d at 1142 ("Qualified immunity applies equally to reasonable mistakes of law and fact.").

---

[4] The Supreme Court has recognized two other circumstances in which reliance on a warrant is not objectively reasonable: if "the magistrate abandoned his detached and neutral role," *Leon*, 468 U.S. at 926; *see also id.* at 923, or if a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid," *id.* at 923. Plaintiff does not allege facts suggesting that either of these exceptions might apply in this case.

**3.**

The court next considers whether Detective Boucher was "dishonest or reckless" in preparing her affidavit. It is well settled that dishonesty or recklessness can involve not only affirmative misrepresentations, but also omissions of material fact: "Nor will a warrant protect officers who misrepresent or omit material facts to the magistrate judge." *Stonecipher*, 759 F.3d at 1142; *see also Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990).

In this case, taking Mr. Long's well-pleaded facts as true, it is clear that Detective Boucher did omit various facts from her affidavit—most notably any information relating to Mr. Long's proffered alibi. The questions are thus whether the omitted facts were material and whether Detective Boucher omitted them knowingly or recklessly.

In this context, the test for materiality is simply whether including the omitted facts in the affidavit would have negated probable cause: "in the case of omitted evidence it is not enough to ask simply whether the truthful statements included in the affidavit are by themselves sufficient to support a probable cause finding; the court also must ask if inclusion of the omitted material would negate probable cause." *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990).

As discussed, taking Mr. Long's well-pleaded facts as true, the court cannot say as a matter of law that including the omitted facts would not have negated probable cause. The court thus cannot say as a matter of law at this stage of the proceedings that the omitted facts were not material.

That is not enough to deny Detective Boucher's defense of qualified immunity, however—the court must next determine whether her omission of material facts was *knowing or reckless*. This inquiry is "an objective one." *Stonecipher*, 759 F.3d at 1142.

Given that the court itself cannot say as a matter of law whether the omitted facts would have negated probable cause, it certainly cannot say that any reasonable officer would have known that the omitted facts were material—*i.e.*, that their inclusion in Detective Boucher's affidavit would have negated probable cause. The court accordingly concludes that Detective Boucher did not knowingly omit material facts.

Whether Detective Boucher recklessly omitted material facts is a different question. The mere fact that Detective Boucher omitted facts that may have been material is not itself enough to establish recklessness. As the Tenth Circuit has explained, a law enforcement officer "cannot be held accountable for failing to divine the materiality of every possible scrap of evidence." *Stonecipher*, 759 F.3d at 1142 (quoting *Moldowan v. City of Warren*, 578 F.3d 351, 388 (6th Circuit (2009)). Rather, "omissions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 787–88 (3rd Cir. 2000)).

Taking Plaintiff's well-pleaded facts as true, the court finds that any reasonable officer would have known that the facts relating to the alibi were "the kind of thing the judge would wish to know." It follows that Detective Boucher recklessly omitted facts that the court cannot say were not material at this stage of the proceedings.

**4.**

Defendants argue that regardless of how she obtained the warrant, Detective Boucher is entitled to qualified immunity so long as she had arguable probable cause. Under this standard, Detective Boucher would be entitled to qualified immunity so long as a reasonable officer could have believed there was probable cause to compel Mr. Long to provide a DNA sample. *See*

*Stonecipher*, 759 F.3d at 1141 (arguable probable cause is "another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."). The Supreme Court, however, has generally applied the arguable probable cause test in cases when a search or seizure was made without a warrant. *See, e.g., District of Columbia v. Wesby*, 138 S. Ct. 577, 591 (2018) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In cases where a search or seizure is made pursuant to a warrant, by contrast, the Court has held "that the same standard of objective reasonableness that [the Court] applied in the context of a suppression hearing in *Leon defines* the qualified immunity accorded an officer who obtained or relied on an allegedly invalid warrant." *Messerschmidt*, 565 U.S. at 546 n.1 (internal quotations omitted; emphasis added); *accord Malley*, 475 U.S. at 344. To be sure, in *Stonecipher*, the 10th Circuit did discuss the arguable probable cause standard before turning to the objective good faith test set out in *Messerschmidt*, *Malley*, and *Leon*. *See* 759 F.3d at 1141. And in *Stonecipher*, the 10th Circuit also said that "[a] neutral magistrate judge's issuance of a warrant is the *clearest* indication that the officers acted in an objectively reasonable manner"— not that it was the *only* indication. *Id*.[5] In addition, *Stonecipher* could conceivably be read to incorporate the arguable probable cause standard into the test for whether an officer knowingly or recklessly omitted material facts, so that qualified immunity is lost only if the officer knowingly or recklessly omitted facts that any reasonable officer would have known negated

---

[5] The Supreme Court said the same thing in *Messerschmidt* as well, *see* 565 U.S. at 546, but, as noted, it went on to clarify that "the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon defines* the qualified immunity accorded an officer who obtained or relied on an allegedly invalid warrant," *id*. at 546 n.1 (emphasis added).

probable cause. After stating that the test for whether an officer knowingly or recklessly misrepresented or omitted material facts "is an objective one," the court went on to say that "when there is no dispute over the material facts, a court may determine as a matter of law whether a reasonable officer would have found probable cause under the circumstances." *Id.* at 1142.

The court does not believe that this is the best reading of *Stonecipher*, however. While the question whether any reasonable officer would have known that omitted facts would have negated probable cause does appear to track the question of whether a defendant *knowingly* omitted material facts, *Stonecipher* states a different test for reckless omissions, as discussed: "omissions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 787–88 (3rd Cir. 2000)).

In addition, as relevant here, *Leon* recognized *two* circumstances in which an officer conducting a search or seizure pursuant to a warrant fails to act in objective good faith: (1) where the officer "could not have harbored an objectively reasonable belief in the existence of probable cause" and (2) where "the officers were dishonest or reckless in preparing their affidavit." Both Supreme Court and Tenth Circuit qualified immunity precedent, including *Stonecipher*, have recognized both exceptions. *See, e.g., Messerschmidt,* 565 U.S. at 547 & n.2; *Stonecipher*, 759 F.3d at 1142.  Holding that an officer is entitled to qualified immunity so long as she could have reasonably believed that the warrant or the search was supported by probable cause would eliminate the second exception.

This is not a reasonable reading of *Leon* or of the Supreme Court and Tenth Circuit cases applying *Leon*'s standard in the qualified immunity context. Rather, these cases make clear that

in obtaining and executing a warrant, an officer is not entitled to substitute her own judgment of probable cause for that of the magistrate. Thus, even if an officer reasonably believes that certain facts would not negate probable cause, she may not omit those facts from an affidavit offered in support of a warrant if any reasonable officer would have known they are "the kind of thing the judge would wish to know." And at least where, as here, it is clearly established that the search could not have been conducted constitutionally in the absence of a warrant, *see supra*, the court concludes that the existence of arguable probable cause—*i.e.*, the fact that an officer reasonably, but mistakenly believed the search supported by probable cause—does not suffice to confer qualified immunity on an officer who obtained the warrant required to conduct the search by recklessly omitting material facts.

*     *     *

For all of these reasons, the Court denies Defendants' motion to dismiss Mr. Long's claim against Detective Boucher on the ground of qualified immunity.

### III.

Mr. Long also asserts what he calls a supervisory liability claim. He asserts this claim only against North Salt Lake City, however, rather than against any supervisor. In order to state a supervisory liability claim, a plaintiff must specify who was personally involved. Because Mr. Long fails to do so, the Court will treat this claim as one for municipality liability.

A municipality may be held liable for the unconstitutional actions of its employees under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" at issue. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). A plaintiff must accordingly show "(1) the existence of a municipal policy or

custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

> There are several forms a municipal policy or custom may take:
>
> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.* (internal quotations omitted).

Mr. Long bases his claim on conclusory allegations of (1) a formal regulation or policy statement, (2) an informal custom amounting to a widespread practice, or (3) the failure to adequately train or supervise employees. Mr. Long fails to allege facts that would support any of these conclusory allegations, however. And although Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,'" the Supreme Court has made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Mr. Long's allegations regarding municipal liability do not meet this pleading standard. He has not pleaded facts that would support a reasonable inference that his injuries were caused by any practice or policy that can be attributed to North Salt Lake City. The court accordingly grants Defendants' motion to dismiss Mr. Long's claim against the municipality.

*     *     *

Defendants motion to dismiss is **DENIED** with respect to the claim against Detective Boucher and is **GRANTED** with respect to the claim against North Salt Lake City.

**IT IS SO ORDERED**.

DATED this 24th day of November, 2020.

BY THE COURT:

Howard C. Nielson, Jr.
United States District Judge